MARK A. STEPHENS AND CAROL A. STEPHENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stephens v. Commissioner
Docket No. 11940-89
United States Tax Court
T.C. Memo 1991-383; 1991 Tax Ct. Memo LEXIS 448; 62 T.C.M. (CCH) 430; T.C.M. (RIA) 91383; August 12, 1991, Filed *448 Decision will be entered under Rule 155. William M. Zehner, for the petitioners. Harris L. Bonnette, Jr., for the respondent. PATE, Special Trial Judge. PATE
MEMORANDUM FINDINGS OF FACTS AND OPINION This case was assigned pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent issued a notice of deficiency to petitioners in which he determined a deficiency of $ 5,289 in their Federal income taxes for 1985. After concessions by both parties, the issues remaining for our decision are: (1) Whether petitioners were engaged in parasailing and photography for profit, and, therefore, are entitled to deduct losses incurred in their parasailing and photographic activities; and (2) whether additional income of $ 840 received by petitioners is related to either their parasailing or photographic *449 activities. FINDINGS OF FACT The parties have stipulated some of the facts, which are so found. The Stipulation of Facts filed by the parties and attached exhibits are incorporated herein by this reference. Mark A. Stephens and Carol A. Stephens (hereinafter referred to as petitioners), husband and wife, filed a joint income tax return for 1985 with the Director, Internal Revenue Service Center, Austin, Texas. They were residents of McQueeny, Texas, at the time they filed this petition. During 1985, Mark A. Stephens (hereinafter referred to as Mr. Stephens or petitioner) was employed as an outside salesman by Southwest Office Supply Company (hereinafter referred to as Southwest) in San Antonio, Texas. He sold office supplies, furniture, and interior design services. Typically, he worked for Southwest from 9 a.m. to 4 p.m., Monday through Friday. Carol A. Stephens (hereinafter referred to as Mrs. Stephens) was employed by Traveler's Insurance Company in San Antonio, Texas. Typically, Mrs. Stephens worked for Travelers from 7:30 a.m. to 4:15 p.m., Monday through Friday. Parasailing Activity
During 1985, petitioners also owned and operated Pegasus Parakites and Watersleds *450 (hereinafter referred to as Pegasus), selling parasailing rides, watersled rides, and related equipment. Parasailing is a recreational water sport in which a participant straps a parachute to his back and is pulled by a boat. As the speed of the boat increases, the parachute acts as a sail pulling the participant up until he is floating through the air. Petitioners began Pegasus in the spring of 1985 and terminated it in October 1985. They operated only during the summertime on weekends and holidays. Prior to 1985, petitioners had a common interest in water activity. Mrs. Stephens was an experienced parasailor. Mr. Stephens was knowledgeable in boats and waterskiing. In 1983 and 1984, petitioners purchased two boats. These boats were used in Pegasus' operation and by petitioners for recreational purposes both before and after organizing Pegasus. In 1984 and 1985, petitioner learned parasailing by attending the John Catherwood Waterskiing and Parasailing School in Ft. Meyers, Florida. There he learned how to parasail, to operate a boat pulling a parasailor, and to teach participants to parasail. With regard to operating a parasailing business, petitioners also sought out *451 and received advice from several parakite manufacturers and contemporaries in the business. Pegasus operated on two lakes, Canyon Lake and Lake L.B.J. (both of which were located near petitioners' home). In the spring of 1985, petitioners researched the operating requirements on each of the lakes and found that the restrictions on Canyon Lake were more stringent than on Lake L.B.J. They also found that fees were charged for concessions on Canyon Lake. Consequently, they decided to confine Pegasus' activities to Lake L.B.J., and filed a request for permission to use that lake for commercial purposes with the Lower Colorado River Authority in Austin, Texas. In June, they were informed that, based on a description of their operations, no commercial license was required. Early in 1985, petitioners had been advised by a parakite vendor that operating from a floating dock reduced the risk of injury to participants and bystanders. They investigated the profitability of acquiring a floating dock and found that using one maximized the number of rides they could give in a specified period of time. They priced the dock and attempted to make arrangements with marinas surrounding Lake *452 L.B.J. to pick people up to take them out to the floating dock. However, because petitioners completed their investigation late in the season, Pegasus never did acquire a floating dock prior to the termination of its operations in October 1985. To promote business, Pegasus advertised in the yellow pages that it had parakites and watersleds for sale. Petitioners also received referrals, from suppliers of the equipment, of prospective customers who wanted to try out the equipment prior to purchasing it. In addition, petitioners attracted customers for rides by flying a banner attached to their multicolored parakite, and personally contacted persons hosting parties to provide rides to their guests on parakites, watersleds, or waterskis. Petitioners consulted a CPA for advice with respect to Pegasus' operations. They implemented several of his recommendations. For example, they: (1) Set up a separate bank account for parasailing receipts and expenditures; (2) obtained a sales tax license and collected sales tax on the items they sold; (3) filed an assumed name certificate; (4) printed business cards featuring the name "Pegasus Parakites & Watersleds"; and (5) maintained a journal *453 to record receipts and disbursements. Petitioners also prepared and required participants to sign contracts acknowledging the risks of parasailing and watersledding. These contracts contained provisions releasing petitioners from liability to the participants in the event they were injured using petitioners' equipment. Petitioners, along with other individuals engaged in commercial parasailing, were members of the American Parasailors Association. Because petitioners' boat insurance did not cover commercial activities, and because individual liability insurance for commercial parasailing was not available at a reasonable cost, the association tried to obtain group liability coverage. However, the association was unsuccessful in that endeavor. Since petitioners were reluctant to continue Pegasus without adequate insurance coverage, they discontinued operations in October 1985. Afterward, they liquidated their inventory; the last sale took place in 1986. [2]
*454 For the calendar year 1985, petitioners reported gross receipts on Schedule C of their Federal income tax return of $ 5,585, $ 4,576 of which was derived from parasailing. This latter amount included $ 1,500 from the sale of parakites, $ 1,300 from the sale of watersleds, and $ 1,776 from parakite and watersled rides. Their parasailing expenses for 1985 consisted of: ITEM
AMOUNT
Advertising
$ 276.00
Dues & Publications
15.00
Interest
1,068.00
Repairs
275.37
Travel & Entertainment
173.33
Utilities & Telephone
7.00
Nonpersonal Costs
2,744.00
In addition, petitioners paid the following expenses during 1985 for both their parasailing and photographic activities: ITEM
AMOUNT
Car & Truck
$ 1,649.00
Depreciation
11.00
Office
455.11
Accounting
150.00
Miscellaneous
228.00
Other Costs
7,399.00
Of these expenses $ 8,877 was attributable to parasailing, resulting in a net loss from parasailing of $ 8,859. Photographic Activity
In 1983, petitioner started taking and selling photographs, primarily of natural landscapes, portraits, and novelty subjects. Although petitioner never had any formal training in photography, over the years, *455 he acquired two cameras together with auxiliary equipment and found that this equipment was suitable for a wide variety of photographic applications. For the most part, he took the photographs he offered for sale while on trips to Hawaii, Texas, Colorado, and New Mexico. At the time of trial, petitioner maintained a portfolio of photographs consisting of 258 3-by-5-inch photographs and 18 20-by-24-inch photographs. Petitioner had a sample collection of these photographs framed, priced them, and displayed them for sale at a doctor's office and at Southwest's offices. In addition, he sold some to customers he called upon while selling office supplies for Southwest, primarily for use as decoration in offices and other commercial space. Petitioner reported net losses from this activity during 1983 and 1984. For the calendar year 1985, he reported gross receipts of $ 1,010, expended $ 340 for materials and supplies, and expended $ 149 for dues and publications. In addition, $ 1,015 of the joint expenditures listed heretofore were attributable to his photographic activities. Consequently, petitioner incurred a net loss from his photographic activities of $ 495. Other Income
*456 In the notice of deficiency, respondent determined that petitioners underreported their gross income by $ 6,363. At trial, the parties stipulated that the correct amount is $ 840. Petitioner could not specifically identify the source of this income. OPINION As a general rule, to deduct losses incurred in any activity, a taxpayer must show that he or she entered into the activity, or continued the activity, with an objective of making a profit. Sec. 1.183-2(a), Income Tax Regs. If the taxpayer engaged in the activity without such profit objective, deductions attributable thereto are allowed, but (as applicable here) only to the extent of the income derived from the activity. Sec. 183(b)(1) and (2). The test under section 183 is whether the taxpayer engaged in the activity with an actual and honest objective of making a profit. Beck v. Commissioner, 85 T.C. 557, 569 (1985); Flowers v. Commissioner, 80 T.C. 914, 931 (1983); Dreicer v. Commissioner, 78 T.C. 642, 644-646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), *457 affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, 91 T.C. 371, 392-393 (1988); Golanty v. Commissioner, supra at 426. The burden of proving such objective is on petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Greater weight is given to objective facts than to a taxpayer's statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Beck v. Commissioner, 85 T.C. at 570; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors which normally should be considered in determining whether an activity is engaged in with the requisite profit objective. The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; *458 (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor, nor the existence of even a majority of the factors, is controlling. Rather, it is an evaluation of all the facts and circumstances in the case taken as a whole which is determinative. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Benz v. Commissioner, 63 T.C. 375, 382 (1974). Respondent maintains that the losses incurred in both petitioner's parasailing and photographic activities are subject to section 183 limitations because they were not activities engaged in for profit. For the reasons set out below, we conclude that petitioners had an objective of profit with regard to their parasailing activity known as Pegasus, but not with regard to petitioner's photographic *459 activity. Petitioners convinced this Court that they had a profit objective with regard to their parasailing activity because, among other things, they clearly showed that they ran Pegasus in a businesslike manner. Our conclusion is supported by the fact that (1) Pegasus was operated on days and at times when there was a demand for the products and services it offered; (2) petitioners sought out and obtained the training and experience necessary to properly operate the business; (3) petitioners consulted with persons familiar with the business for advice and counsel, both before organizing Pegasus and concurrent with its operations; (4) petitioners promoted the business through the use of printed business cards, advertisements in the yellow pages, and by display advertising to promote rides; (5) petitioners inquired about and determined what the legal requirements were for operating a commercial enterprise on the lakes near their home, and applied for the license they thought was necessary for Pegasus to meet such requirements; (6) Pegasus obtained a sales tax license and reported and collected sales tax on the items it sold; (7) Pegasus used a written contract with its customers *460 in an attempt to protect itself from the increased risk of liability faced by a commercial operation; and (8) petitioners maintained an accounting system to record the receipts and disbursements of the business. All of these factors show that petitioners regarded Pegasus as a business and were seriously trying to make a profit in operating it. Respondent argues, however, that it was unreasonable for petitioners to believe that they could profit from a parasailing enterprise in the San Antonio, Texas, area due to the limited summer season during which there was a demand for Pegasus' products and services. Yet, respondent fails to adequately explain how he came to this conclusion. Had Pegasus been successful in selling many more parakites and watersleds than it did, its gross profit should have been sufficient to more than cover its costs. Moreover, since this was Pegasus' first year in operation, there is no reason to believe that such level of sales was not achievable. Further, respondent argues that parasailing was more in the nature of a hobby because petitioners loved water sports and were avid boaters and waterskiers prior to 1985. However, a business need not be called *461 a hobby merely because its owners find it pleasurable. Jackson v. Commissioner, 59 T.C. 312, 317 (1972). Even if petitioners started parasailing because of their personal interest in that sport, they soon perceived the profit potential in selling the necessary equipment and in providing rides to others for compensation. Moreover, normally, persons pursuing parasailing as a hobby would not regularly interrupt their participation in the sport to take the time to entice others to participate, nor would they normally charge these other participants for their services, especially not on a regular basis. Such actions indicate that petitioners were trying to generate income, not just enjoy themselves on a lazy summer afternoon. In contrast, however, the objective facts regarding petitioner's photographic activity lead us to conclude that petitioner did not engage in it with an objective of making a profit. In this activity, petitioner acquired his equipment over an extended period of time, and took the photographs he offered for sale while on personal trips. His promotional efforts were minimal at best. He only sold his photographs incidentally in connection with *462 selling office supplies in the course of his employment. Further, even after he sustained losses in 1983 and 1984, he failed to increase or change his promotional methods. Moreover, the record does not disclose any attempt on petitioner's part to acquire the expertise necessary to distinguish him from any amateur photographer highly interested in the subject. He received no training in the art of photography, either formal or informal, from professionals or contemporaries in the business. Nor did he actively seek out and adopt business techniques in his photographic activity as petitioners did in their Pegasus operations. Based on these factors, we find that petitioner did not engage in his photographic activity with an objective of making a profit. Lastly, we must decide whether the additional income of $ 840, which the parties have agreed was received by petitioners and is reportable as gross income by them, is related to either Mr. Stephens' photographic activity, or their operation of Pegasus. Petitioners have the burden of proving the source of such additional income. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). At trial, petitioner could *463 not identify the source of this additional income. Because petitioners have the burden of proof and have failed to carry such burden, we hold that such additional income is not attributable to either petitioner's photographic activity or Pegasus' operations. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Because the record does not disclose the cost of the item sold in 1986, and because respondent did not raise any issue with regard to Pegasus' inventory, we make no findings in this regard and the amount of such inventory should not be taken into account by the parties when they make their computation under Rule 155.↩